[Cite as *Arthur v. Spare Time Recreation, Inc.*, 2015-Ohio-3923.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| ROCHELLE ARTHUR, et al., | : | Case No. 14CA37 |
| | : | |
| Plaintiffs-Appellants, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| SPARE TIME RECREATION, INC., | : | |
| et al., | : | |
| | : | |
| Defendants-Appellees. | : | **Released: 09/18/15** |

_____
APPEARANCES:

Jeremy M. Burnside, Portsmouth, Ohio, for Appellants.

John P. Petro, Williams & Petro Co., L.L.C., Columbus, Ohio, for Appellees.
_____

McFarland, A.J.

{¶1}  This is an appeal from a Lawrence County Common Pleas Court decision granting summary judgment in favor Appellees, Spare Time Recreation, Inc., et al.  On appeal, Appellants contend that 1) the trial court erred in granting summary judgment in favor of Appellees by ignoring evidence of the dangerous condition of the floor and finding that no reasonable juror could conclude that Appellees failed to maintain its premises in a reasonably safe manner; 2) the trial court erred in granting summary judgment in favor of Appellees because it inappropriately applied

the assumption of the risk doctrine; and 3) the trial court erred in granting summary judgment in favor of Appellees, by ignoring the statutory duties set forth in R.C. 4171.06.

{¶2} Because there is undisputed evidence that Appellees were in compliance with their operator duties as contained in R.C. 4171.06 and had no knowledge, actual or constructive, of the floor defect complained of by Appellants, there is no genuine issue of material of fact regarding whether Appellees maintained their premises in a reasonably safe condition. In light of this determination and applying the assumption of the risk principles contained in R.C. 4171.09 and 4171.10, Appellants' claims fail as a matter of law. As such, we cannot conclude that the trial court erred in granting summary judgment in favor of Appellees. Accordingly, Appellants' assignments of error, all of which challenge the trial court's grant of summary judgment, are overruled and the decision of the trial court is affirmed.

FACTS

{¶3} Appellants, Rochelle Arthur, et al., filed a complaint against Appellees, Spare Time Recreation, Inc., et al., on January 15, 2013, alleging negligence on the part of Appellees for failing to maintain its premises in a

reasonably safe condition.[1]  Appellant more specifically alleged that an unsafe hole or crack in the floor caused her to fall while roller skating and that she sustained serious personal injury as a result.  The record indicates that Appellant was attending a cub scout function held at Spare Time Recreation, Inc. with her son on January 17, 2011, when the incident occurred.  Appellee, Spare Time Recreation, Inc. is an entertainment facility that offers bowling, roller skating and laser tag.

{¶4}  As the matter proceeded through the discovery process, Appellant testified during her deposition that as she was skating with her son, the front left wheel on her right skate went down into a hole or a ridge, which caused her to fall.  She testified that she saw no imperfection in the floor prior to her fall, but that afterwards she noticed a ridge, or something dark on the floor.  She testified that because she could not see the area well, she could not describe it in more detail.  Although she took no photos on the night of the incident, she did hire private investigator, Eddie Jenkins, to take photos after the incident occurred.  Jenkins testified in his deposition that he went to Spare Time Recreation some time in March of 2011 and took photos of the skating rink floor, nearly two months after the incident at issue occurred.  Jenkins' photos depict some areas of the floor which he testified

---

[1] Hereinafter Appellants and Appellees will be referred to in singular form, referring to Rochelle Arthur and Spare Time Recreation, Inc., respectively.

were damaged when he was there, however, they do not depict the condition of the skating rink floor on January 17, 2011.

{¶5} David Lucas, Ph.D., boy scout troop scout master, was also deposed. He was present on the evening the incident occurred and actually witnessed Appellant's fall as he was skating approximately fifteen to twenty feet behind her. When asked whether there were any defects in the floor in the area where Appellant fell, he testified "No. None at all." He testified that the lighting was good at the time of the fall and that he went over and spent three to four minutes inspecting the floor after the fall and saw no imperfections or debris in the floor that would have caused her to fall. Lucas also testified that caution tape was up in another area of the floor due to a roof leak, but that was not the area in which Appellant fell.

{¶6} The owner, Jeff Dillow, and employees Michael Wood and Michael Morgan were also deposed. Dillow testified that Michael Morgan was the skateguard on duty the night of the incident and that the manager, Michael Wood, was also present. Dillow testified that skateguards have a responsibility to make daily inspections of the skating rink floor before each skating session and that he personally goes over the floor at least two to three times per week. He testified that there have been times when sections of the floor have had to be "cordoned" off due to roof leaks. Manager

Michael Wood testified that if there are less than one hundred patrons, they only have one skateguard on duty. He testified that the skateguard has to check the floor before each session and that he was not aware of any "ridges" or "rolls" in the floor on the date of the incident. When shown photos taken by Jenkins of the alleged defects in the skating rink floor, Wood repeatedly testified that whether the alleged defects were safety concerns would depend on how deep the defects were and how smooth the surface was, which could not be discerned from the photos.

{¶7} Michael Morgan, the skateguard on duty at the time of the incident, testified during his deposition that his duties, among other things, include keeping an eye on the kids skating and keeping the skate floor clean. When shown photos depicting alleged defects in the floor, he testified that areas with seams, stains or paint peels were not concerning as the areas are always sanded down and patched so that they are smooth. He testified areas with peeled paint are not a concern as long as there are no paint chips present. He testified that the floor is cleaned and swept regularly and that if he becomes aware of any issues with the floor, such as paint chips, he will clean it up before letting skaters back on the floor. He also testified that after Appellant's fall, he went out and checked the floor where she fell and could not find anything wrong. He then checked her skates to see if the

wheels were locked but they were not. Michael Morgan completed an incident report related to Appellant's fall and indicated on the report that Appellant told him she fell while helping her son.

{¶8} Appellee moved the trial court for summary judgment on May 27, 2014, which was granted over the objection of Appellant on November 10, 2014. The trial court relied on Appellant's lack of specificity as to the cause of her fall, coupled with the doctrine of assumption of the risk associated with roller skating in issuing its decision. The trial court found that, based upon the evidence before it, no reasonable juror could conclude that Appellee failed to maintain its premises in a reasonably safe manner, considering the nature of the activity involved. It is from this decision that Appellants bring their timely appeal, assigning three errors for our review.

ASSIGNMENTS OF ERROR

"I.     THE TRIAL COURT ERRED IN GRANTING SUMMARY
        JUDGMENT IN FAVOR OF APPELLEE SPARE TIME
        RECREATION, INC. BY IGNORING THE EVIDENCE OF THE
        DANGEROUS CONDITION OF THE FLOOR AND FINDING
        THAT NO REASONABLE JUROR COULD CONCLUDE THAT
        THE DEFENDANT FAILED TO MAINTAIN ITS PREMISES IN A
        REASONABLY SAFE MANNER.

II.     THE TRIAL COURT ERRED IN GRANTING SUMMARY
        JUDGMENT IN FAVOR OF APPELLEE SPARE TIME
        RECREATION, INC., BECAUSE IT INAPPROPRIATELY
        APPLIED THE ASSUMPTION OF THE RISK DOCTRINE.

III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUGMENT IN FAVOR OF APPELLEE SPARE TIME RECREATION, INC., BY IGNORING THE STATUTORY DUTIES SET FORTH IN O.R.C. 4171.06."

## LEGAL ANALYSIS

{¶9} Because Appellant's assignments of error all challenge the trial court's grant of summary judgment, we address them in conjunction with one another. Appellant contends that the trial court erred in granting summary judgment in favor of Appellee, arguing that the trial court ignored evidence of a dangerous condition on the floor, ignored the statutory duties set forth in R.C. 4171.06, and inappropriately applied the assumption of the risk doctrine. We begin by considering the appropriate standard of review when reviewing the grant or denial of summary judgment.

## SUMMARY JUDGMENT STANDARD

{¶10} Appellate courts conduct a de novo review of trial court summary judgment decisions. See, e.g., *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, an appellate court must independently review the record to determine if summary judgment is appropriate and need not defer to the trial court's decision. See *Brown v. Scioto Bd. of Commrs*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist. 1993); *Morehead v. Conley*, 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786 (4th Dist. 1991). Thus, to determine whether a trial court

properly granted a summary judgment motion, an appellate court must review the Civ.R. 56 summary judgment standard, as well as the applicable law.

Civ.R. 56(C) provides, in relevant part, as follows:

"* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶11} Thus, pursuant to Civ.R. 56, a trial court may not award summary judgment unless the evidence demonstrates that: (1) no genuine

issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and after viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., *Vahila v. Hall*, 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164 (1997).

{¶12}  Under Civ.R. 56, the moving party bears the initial burden to inform the trial court of the basis for the motion, and to identify those portions of the record that demonstrate the absence of a material fact. *Vahila*, supra; *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).  The moving party cannot discharge its initial burden under the rule merely with a conclusory assertion that the nonmoving party has no evidence to prove its case. See *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 147, 677 N.E.2d 308 (1997); *Dresher*, supra.  Rather, the moving party must specifically refer to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher*, supra.

{¶13} "[U]nless a movant meets its initial burden of establishing that the nonmovant has either a complete lack of evidence or has an insufficient showing of evidence to establish the existence of an essential element of its case upon which the nonmovant will have the burden of proof at trial, a trial court shall not grant a summary judgment." *Pennsylvania Lumbermans Ins. Corp. v. Landmark Elec., Inc.*, 110 Ohio App.3d 732, 742, 675 N.E.2d 65 (2nd Dist. 1996). Once the moving party satisfies its burden, the nonmoving party bears a corresponding duty to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher*, supra. A trial court may grant a properly supported summary judgment motion if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Id.; *Jackson v. Alert Fire & Safety Equip., Inc.*, 58 Ohio St.3d 48, 52, 567 N.E.2d 1027 (1991).

## NEGLIGENCE

{¶14} A successful negligence action requires a plaintiff to establish that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. See, e.g., *Texler v. D.O. Summers Cleaners*, 81 Ohio St.3d 677, 680, 693 N.E.2d 217 (1998); *Jeffers*

*v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989); *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 472 N.E.2d 707 (1984). If a defendant points to evidence to illustrate that the plaintiff will be unable to prove any one of the foregoing elements, and if the plaintiff fails to respond as Civ.R. 56 provides, the defendant is entitled to judgment as a matter of law. See *Lang v. Holly Hill Motel, Inc.*, 4th Dist. Jackson No. 06CA18, 2007-Ohio-3898, ¶ 19, affirmed, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120.

APPLICATION OF R.C. CHAPTER 4171

{¶15}  R.C. 4171.05, entitled "Legislative finding of need for safety standards" provides as follows with respect to roller skating:

> "The general assembly acknowledges that the recreational sport
> of roller skating is practiced by a large number of citizens of
> Ohio, provides a wholesome and healthy family activity which
> should be encouraged, and significantly contributes to the
> economy of this state.  The general assembly further
> acknowledges that roller skating as a recreational sport can be
> hazardous to roller skaters and that minimal safety standards
> for, and duties and responsibilities of, operators and roller
> skaters are in the public interest."

{¶16} R.C. 4171.06, entitled "Duties of operators" provides, in pertinent part, as follows: "Each operator shall: * * * (C) Maintain the skating surface in a reasonably safe and clean condition and inspect the skating surface before each session[.]" Further, R.C. 4171.07 entitled "Floor supervisors" provides, as follows:

> "Each operator shall maintain at least one floor supervisor on duty for every one hundred seventy-five roller skaters when the roller skating rink is open for sessions. The floor supervisor shall be in a position to observe the skate floor and shall monitor activity on the skate floor and be available to assist skaters in understanding and adhering to the responsibilities of roller skaters set forth in section 4171.08 of the Revised Code. The floor supervisor shall comply with the duties of a floor supervisor as defined by the roller skating rink operators of America or its successor organization, including directing traffic and assisting roller skaters who may fall or sustain injuries. The floor supervisor also shall issue warnings, reprimands, or penalties to roller skaters upon their violation of the responsibilities set forth in section 4171.08 of the Revised Code."

{¶17} Thus, considering the negligence principles set forth above, roller skating rink operators, such as Spare Time Recreation, have a statutory duty to maintain the skating surface in a reasonably safe and clean condition and must inspect the skating surface before each session. Breach of such a duty which proximately results in injury constitutes negligence. As set forth above, there is undisputed evidence in the record indicating that Appellee discharged its duties under R.C. 4171.06 by conducting regular and recurring inspections of the floor, two to three times a week, every weekend and before each skate session. There is further evidence that on the night in question, there was a skateguard, or floor supervisor, on duty for the party that only consisted of about thirty people, including both the adults and children.

{¶18} There is further undisputed evidence in the record that after Appellant fell, no defect in the floor could be identified visually. Appellant herself testified that she did not see an imperfection before she fell but rather felt it. Although she testified she saw a dark spot on the floor afterwards, she could not describe the size or depth of it. Contrary to Appellant's testimony, both David Lucas and Michael Morgan testified that they closely inspected the area of the floor where Appellant fell immediately after her fall and found no imperfection or debris that would have caused Appellant to

fall. Although photos appear in the record, taken by a private investigator approximately two months after the incident in question, it cannot be said that the photos depict the floor on the night of the incident. When questioned about alleged floor defects depicted in the photographs, Spare Time Recreation management and personnel consistently stated that maintenance was done as needed and routinely, that when aware of a safety issue, such as water due to a roof leak or other issue they would barricade off areas of the floor, and that they were not concerned about the areas depicted in the photos, as any repaired areas were sanded until smooth.

{¶19} Thus, even construing the evidence in a light most favorable to Appellant and assuming that her skate wheel did fall into a ridge or indention in the floor, because it was unable to be identified upon inspection even after the incident it does not appear that the imperfection in the floor was an open and obvious hazard. Further, Appellant has submitted no evidence that Appellee actually created the hazard or had knowledge of the hazard. Instead, Appellant suggests Appellee should have known about the hazard. However, based upon the undisputed evidence in the record, including the fact that the alleged imperfection was not observed by Appellant prior to the fall and could not be located by either Lucas or Spare Time Recreation Staff after the fall, we disagree. There is no evidence in the

record that anyone had reported the alleged defect to Spare Time staff. There is simply no evidence in the record that Spare Time staff had knowledge of the defect but failed to remedy it.

{¶20} The fact that another area of the floor was barricaded off that night indicates that when aware of potential safety issues, Appellee acted to avoid injury to patrons. At best, the evidence indicates that the alleged defect was isolated and of unknown duration, possibly occurring during the skating session. Further, because Appellant cannot dispute the evidence that Appellee complied with its statutory duty to inspect the skate floor before the skating session, she cannot meet her burden of showing that Appellee failed to maintain the skating surface in a reasonably safe and clean condition. Because Appellant is unable to prove a breach of duty by a failure to comply with R.C. 4171.06(C), the doctrine of assumption of the risk, which will be discussed more fully below, applies.

ASSUMPTION OF THE RISK

{¶21} R.C. 4171.09 entitled " Express assumption of risk" provides as follows:

"The general assembly recognizes that roller skating as a recreational sport can be hazardous to roller skaters regardless of all feasible safety measures that can be taken. Therefore,

roller skaters are deemed to have knowledge of and to expressly assume the risks of and legal responsibility for any losses, damages, or injuries that result from contact with other roller skaters or spectators, injuries that result from falls caused by loss of balance, and injuries that involve objects or artificial structures properly within the intended path of travel of the roller skater, which are not otherwise attributable to an operator's breach of his duties pursuant to sections 4171.06 and 4171.07 of the Revised Code."

{¶22} Further, R.C. 4171.10 entitled "Assumption of risk as defense; comparative negligence" provides that:

"The express assumption of risk set forth in section 4171.09 of the Revised Code shall serve as a complete defense in a tort or other civil action against an operator by a roller skater for injuries resulting from the assumed risks of roller skating. The comparative negligence or other tort provisions of sections 2315.32 to 2315.36 of the Revised Code shall not apply unless the operator has breached the operator's duties pursuant to sections 4171.06 and 4171.07 of the Revised Code."

{¶23} Caselaw on this topic generally indicates that hazards that are not open and obvious, and that were either created or known by skating rink operators are not risks that are assumed by skating rink patrons. See generally, *William Clements, et al. v. Skate 9H Realty, Inc., et al.*, 277 A.D.2d 614, 714 N.Y.S.2d 836, 2000 N.Y. App. Div. LEXIS 11342 (assumption of the risk doctrine applied to hole in skating floor that was open and obvious); *Alfred F. Schmidt v. State of New York*, 198 Misc. 802, 100 N.Y.S.2d 504, 1950 N.Y. Misc. LEXIS 2145 (skater did not assume any risk from an unsafe condition of the rink of which he had no knowledge, but which might reasonably have been anticipated by the proprietor of the rink, specifically a protruding metal strip that had protruded in the past); *Elizabeth B. Neirman, et al. v. Casino Arena Attractions, Inc., et al.*, 46 N.J. Super. 566, 135 A.2d 210, 1957 N.J. Super. LEXIS 436 (liability found as a result of generally deteriorated condition of ice and distinguishing from cases involving an isolated defect of unknown duration). Skating rink patrons also do not assume the risks stemming from the breach of operator duties. *Ronald Vaughn v. Riverside Arena, Inc.*, 2006 Mich. App. LEXIS 3705 (skater did not assume risk of injury as a result of a puddle on the floor, the existence of which employees had been repeatedly notified but failed to remedy).

{¶24} However, caselaw further generally indicates that absent demonstration of a breach of operator duties, the assumption of the risk doctrine applies. See generally, *Nicole L. Gallihugh v. United Skates of America*, 10th Dist. Franklin No. 99AP-624, 2000 WL 423979 (April 20, 2000) (skater assumed risk of fall due to loss of balance due to alleged improperly fitted skates); *Hey v. Skateworld, Inc., et al.*, 2nd Dist. Montgomery No. 16941, 1998 WL 698368 (Oct. 9, 1998) (skating rink found not liable due to compliance with duties contained in R.C. 4171.07 and holding that skating rink did not and could not, in the exercise of ordinary care, know of the danger at issue.)

{¶25} Based on the foregoing, including that 1) Appellee demonstrated its compliance with the duties contained in R.C. Chapter 4171; 2) Appellant cannot demonstrate breach of Appellee's statutory duties; 3) there is no evidence indicating Appellee either created the alleged floor defect or knew or reasonably should have known of its existence; and 4) it appears that the defect in the floor, if it existed, was an isolated defect of unknown duration, we conclude that summary judgment in favor of Appellee was warranted.  In the absence of a breach of operator duties on the part of Appellee, the doctrine of assumption of the risk acts as a complete

defense to Appellant's claims.  Accordingly, the assignments of error raised by Appellant are overruled and the decision of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellants.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Harsha, J.: Concur in Judgment Only.

For the Court,

BY:    _____
       Matthew W. McFarland,
       Administrative Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**